**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**KENNETH ROBERT LAFFERTY, JR.,**

**Plaintiff,**

**v.**                                                    **CIVIL ACTION NO. 1:16CV15**
                                                               **(Judge Keeley)**

**CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER
<u>ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]</u>**

On February 2, 2016, the plaintiff, Kenneth Robert Lafferty, Jr. ("Lafferty"), filed a complaint seeking review of the adverse decision of the defendant, Carolyn Colvin, Acting Commissioner of Social Security ("the Commissioner") (Dkt. No. 1). On September 22, 2016, the Honorable Robert W. Trumble, United States Magistrate Judge, issued a Report and Recommendation ("R&R"), recommending that the Court deny Lafferty's motion for summary judgment, grant the Commissioner's motion for summary judgment, affirm the Commissioner's decision, and dismiss this case with prejudice (Dkt. No. 15). Lafferty filed timely objections to the R&R (Dkt. No. 16).

After considering the record, as well as Lafferty's objections, the Court **ADOPTS** the R&R (Dkt. No. 15), **DENIES** Lafferty's motion for summary judgment (Dkt. No. 10), **GRANTS** the Commissioner's motion for summary judgment (Dkt. No. 12), **AFFIRMS**

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]

the Commissioner's decision, and **DISMISSES** this case **WITH PREJUDICE.**

### I. BACKGROUND

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As part of its review of the R&R, it incorporates by reference Magistrate Judge Trumble's thorough recitation of the facts surrounding Lafferty's disability insurance benefits ("DIB") claim, as well as his articulation of the five-step evaluation process (Dkt. No. 15 at 3-16).

Lafferty was born on August 30, 1980, and was 32 years old at the time he filed his DIB claim on October 11, 2012, alleging a disability onset date on October 8, 2012 (Dkt. No. 7-3 at 2). At the time, he was unemployed, but had previously worked as a youth service worker, car detailer, fast food worker, and telemarketer (Dkt. No. 7-2 at 74). Lafferty alleged that the following physical limitations prevent him from working: arthritis in both hips and lower back pain resulting from a leg length discrepancy (Dkt. No. 7-6 at 5). Although Lafferty did not submit any medical records pre-dating his alleged onset date, the record reflects that he "had bilateral hip surgery and had pin insertion due to dysplasia [of] both hip[s] at the age of 14" (Dkt. No. 7-7 at 9).

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]

On January 30, 2013, at the first physical examination of record, Lafferty reported that he had not had an X-ray, physical therapy, or orthopaedic consultation since the age of 18, although his hip and back pain had persisted since that time. <u>Id.</u> Thereafter, on March 12, 2013, Lafferty presented to the emergency department at United Hospital Center ("UHC"), complaining of exacerbation of his chronic hip pain. <u>Id.</u> at 15. He was diagnosed with chronic hip pain and prescribed Ultram and ibuprofen. <u>Id.</u> at 17-18. On June 5, 2014, Lafferty presented for an appointment at West Virginia University Healthcare, where he complained that his "pain has significantly worsened over the last 6 years." <u>Id.</u> at 65. After X-rays and examination, Lafferty was advised that "hip replacement surgery is inevitable," but he opted not to pursue it. <u>Id.</u> at 66.

The first mental health treatment of record occurred on November 5, 2013, when Lafferty returned to UHC and reported hallucinations and thoughts of self-harm. <u>Id.</u> at 44. He was voluntarily admitted for inpatient medication and counseling until November 11, 2013, at which time his mood had stabilized and he denied suicidal thoughts. <u>Id.</u> at 21. He presented for outpatient

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

treatment at the Community Mental Health Center on March 20, 2014, and July 1, 2014. Id. at 61, 69.

The Commissioner denied Lafferty's claim at both the initial and reconsideration levels (Dkt. No. 1 at 1). Upon Lafferty's request, Administrative Law Judge George A. Mills III ("ALJ") held a hearing on September 17, 2014, following which he denied Lafferty's claim (Dkt. No. 7-2 at 18, 29). Lafferty appealed the ALJ's decision to the Appeals Council, which declined review (Dkt. No. 1 at 2).

Thereafter, on February 2, 2016, Lafferty filed suit in this Court, seeking reversal of the Commissioner's decision. Id. Lafferty has argued that the Commissioner committed reversible error in the three following respects: (1) the ALJ used improper reasons to discount the employability opinion of psychologist Rodney McCullough, MA ("McCullough"), to whom Lafferty's attorney had referred him for a psychological evaluation;[1] (2) the ALJ was not clear about the evidence on which he relied; and (3) the ALJ's

---

[1] Lafferty met with McCullough on July 11 and August 14, 2014. During those meetings, McCullough administered the MCMI-III to assess Lafferty's emotional and behavioral disturbances. Based on the MCMI-III results, as well as Lafferty's prior diagnoses, McCullough concluded that Lafferty could not work any job without risking significant decompensation (Dkt. No. 7-7 at 78-81).

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]

credibility determination held Lafferty to an inappropriately high standard and wrongfully speculated on his motivation to work (Dkt. No. 11 at 5).

In the R&R, Magistrate Judge Trumble concluded that Lafferty's contentions lack merit (Dkt. No. 15). First, he found that the ALJ had properly evaluated and weighed McCullough's opinion. Id. at 21. Second, he found that the ALJ had adequately explained his reasoning and the evidence on which he had relied. Id. at 27. Finally, he concluded that the ALJ had properly assessed Lafferty's credibility and supported his determination with substantial evidence. Id. at 37. In his objections, relying chiefly on the Court's recent decision in Forquer v. Colvin, 1:15cv57, 2016 WL 4250364 (N.D.W. Va. Aug. 11, 2016), Lafferty argues that Magistrate Judge Trumble's recommendation improperly permits an ALJ to reject all psychological opinions and formulate his own medical interpretation of the evidence (Dkt. No. 16 at 1).

### II. APPLICABLE LAW

**A.    Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court must review de novo any portion of the magistrate judge's recommendation to which objection is timely made. As to those portions of a

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

---

recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). Because Lafferty filed objections, this Court will review de novo those portions of the R&R to which he has objected.

**B.    Judicial Review of an ALJ's Decision**

The question presented is not whether Lafferty is disabled. See Mayer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Judicial review of a final decision regarding disability benefits is limited to determining whether the ALJ's findings are supported by substantial evidence, and whether the ALJ correctly applied the law. See 42 U.S.C. § 405(g); Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). It is the duty of the ALJ, not the Court, to make findings of fact and resolve disputed evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979).

Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation omitted)). That "two

inconsistent conclusions" may be drawn "from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." <u>Sec'y of Labor v. Mut. Mining, Inc.</u>, 80 F.3d 110, 113 (4th Cir. 1996) (quoting <u>Conolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1966) (internal quotation omitted)).

"An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning. An ALJ's failure to consider an entire line of evidence falls below the minimal level . . . ." <u>Diaz v. Charter</u>, 55 F.3d 300, 307 (7th Cir. 1995) (internal citation omitted). The Court must be able to "track the ALJ's reasoning and be assured that the ALJ considered the important evidence." <u>Id.</u> at 308 (quoting <u>Green v. Shalala</u>, 51 F.3d 96, 101 (7th Cir. 1995)).

## III. DISCUSSION

### A.   Mental Health Evidence

Lafferty contends that the Court must remand this case because the ALJ discounted McCullough's opinion for "reasons not found in the Commissioner's regulations" (Dkt. No. 11 at 5). More particularly, Lafferty alleges that the ALJ 1) should not have

stressed that McCullough's opinion was procured by counsel, 2) manufactured an inconsistency in McCullough's report, and 3) failed to account for Lafferty's schizo-affective disorder. Id. at 6-9. Lafferty also argues that, despite giving little weight to all psychological opinions, the ALJ failed to adequately explain what evidence he did rely on when he gave "great weight" to the Global Assessment of Functioning ("GAF") scores. Id. at 10-16.

In his R&R, Magistrate Judge Trumble concluded that the ALJ had weighed the appropriate factors and provided substantial evidence to support his decision to accord McCullough's opinion little weight. He also concluded that the ALJ had provided sufficient support for his reliance on Lafferty's GAF scores (Dkt. No. 15 at 24-31).

In his objections, Lafferty contends that Magistrate Judge Trumble clearly erred by formulating his own "post-hoc rationalization" of McCullough's findings (Dkt. No. 16 at 3). He also argues that both the ALJ and Magistrate Judge Trumble ignored certain evidence from Lafferty's treatment notes and improperly relied on Lafferty's activities of daily living. Id.

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]

---

### 1.   Applicable Law

If the claimant's severe mental impairments neither meet nor exceed the severity of a listed impairment, as was the case here,[2] the ALJ then must assess the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(d)(3), by considering medical opinions[3] "along with the rest of the relevant evidence" in a case.  20 C.F.R. § 404.1527(b). With the exception of a treating physician's opinion,[4] the ALJ should consider the following factors in deciding what weight to give a medical opinion: (1) the examining relationship; (2) the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors.  Id.

---

[2]   Lafferty has not challenged the ALJ's step-three determination that his mental impairments are not at least equivalent to a listed impairment (Dkt. No. 7-2 at 20-21).

[3]   "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

[4]   A treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with the other evidence of record. 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

The ALJ's determination as to the weight to be assigned to a medical opinion "generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." <u>Dunn v. Colvin</u>, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted). The ALJ must reach a conclusion that appears rational to the Court. <u>Id.</u> at 266. Of course, an ALJ cannot "succumb to the temptation to play doctor**"** and make his own medical assessment. <u>Schmidt v. Sullivan</u>, 914 F.2d 117, 118 (7th Cir. 1990); <u>see also</u> <u>Wilson v. Califano</u>, 617 F.2d 1050, 1053-54 (4th Cir. 1980) (holding that an ALJ may not "dispense with vocational expert testimony in favor of his own experience").

Although the ALJ may decline to give an opinion weight, it is for the Court to determine whether substantial evidence supports his decision. <u>See</u> <u>Russell v. Barnhart</u>, 58 Fed. App'x 25, 29-30 (4th Cir. 2003) (finding that the ALJ did not supplant medical opinions with his own analysis when the ALJ relied on the claimant's testimony and statements <u>and</u> the assessments of various mental treatment sources); <u>but see</u> <u>Frank v. Barnhart</u>, 326 F.3d 618, 622

(5th Cir. 2003) (noting that the ALJ had impermissibly drawn his own medical conclusions from the data without an expert's help).

### 2.   ALJ's Decision

With regard to Lafferty's mental health, the ALJ discussed and summarized all of the evidence in the record. When Lafferty presented for a consultative examination with Dr. Himanshu Paliwal on January 30, 2013, he was "well dressed, well groomed, keeps good eye contact, thought process intact, no hallucinations or suicidal ideation, mood and affect are appropriate" (Dkt. No. 7-2 at 24). On November 5, 2013, Lafferty voluntarily admitted himself to United Hospital Center for suicidal ideations. There, the "diagnostic impression upon admission was marijuana abuse/dependence and bipolar disorder with psychotic features and substance induced mood disorder, with a [GAF] score of 25 to 30." Id. at 24. After medication adjustment and psychotherapuetic intervention, Lafferty's mood stabilized and he was discharged. Id.

Lafferty thereafter presented to Community Mental Health Center for continued treatment, and in March 2014, reported that his medication was helping with previously reported paranoia and hallucinations. "At that time, the assessment was major depressive disorder (recurrent) with a GAF of 51-60, which is reflective of

moderate symptoms or moderate difficulties in social, occupational, or school functioning." Id. at 24-25.

In April 2014, the assessment of Lafferty had changed to "anxiety disorder" and "schizoaffective disorder with a continued GAF of 51-60." Id. at 25. In addition, the ALJ noted that Lafferty's most recent review assessment in July 2014 reflected a number of reported severe and moderate symptoms, and included a functioning assessment of "mild dysfunction in Domains I and II, extreme dysfunction in Domain III and [m]arked dysfunction in Domain IV." The ALJ went on to explain:

> Notably, the claimant was living in a van and reported arthritic pain in his pelvis an[d] thigh regions. However, upon mental status examination, he displayed no abnormal psychomotor activity, spoke with a normal rate of speech, and his thought process appeared to be logical and goal-directed. While the claimant reported that he was still having delusions, he reported that the medication was helping with hallucinations and that they were greatly less and he did not appear to be experiencing delusions during [the] interview. Further his short term memory appeared to be intact.

Id. At that time, Lafferty's "assessment was schizoaffective disorder and generalized anxiety disorder with a continued GAF of 51-60." Id.

As the ALJ noted, the record provided the psychological evaluation conducted by McCullough, which was obtained upon

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

attorney referral. McCullough concluded that, "even [] a low stress, low productivity quota job[] will not only increase his delusional and hallucinatory symptoms but will mostly [sic] likely led [sic] to a period of significant decompensation" (Dkt. Nos. 7-2 at 25; 7-7 at 80). The ALJ gave little weight to this opinion on employability because "McCullough reported no more than moderate symptoms upon his examination." On the contrary, the ALJ reasoned, "the claimant's limited treatment history and only moderate limitations with relation to GAF scores and []mild dysfunction in domains I and II found by his treating mental health providers indicate that" Lafferty's symptoms are not as severe as alleged. Id. at 25.

Lafferty makes much of the ALJ's failure to define these domains (Dkt. No. 16 at 3). In his R&R, Magistrate Judge Trumble noted that the domains are defined in the CFR and thus concluded that they need not be defined by the ALJ (Dkt. No. 15 at 23 n.8). In the Court's view, it seems unlikely that Lafferty's mental health providers would have used definitions from Social Security regulations in their treatment notes. But, even if they did not, it is clear that the ALJ considered the extreme dysfunction in Domain III and marked dysfunction in Domain IV (Dkt. No. 7-2 at 25). He

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

---

also recounted and considered all of the symptoms and circumstances reported by Lafferty during his mental health review. It is not this Court's role to reweigh conflicting evidence that the ALJ clearly considered. <u>Mut. Mining, Inc.</u>, 80 F.3d at 113.

The ALJ also gave little weight to state agency assessments that found "no severe mental health impairments." <u>Id.</u> at 27. At the time of those assessments, Lafferty had not alleged a mental health impairment; subsequently, however, he sought treatment at UHC and Community Mental Health Center. <u>Id.</u>

The ALJ did give great weight to Lafferty's GAF scores between 25 and 60 that are found throughout the record. He noted that they "were assessed by [Lafferty's] treat[ing] mental health providers, who[] would have a significant insight into the claimant's functional abilities." <u>Id.</u> at 26. Moreover, "the scores indicate that despite an exacerbation in symptoms, [] the claimant's functional abilities have remained at a moderate level with treatment." <u>Id.</u>

### 3. Analysis

#### a. McCullough's Opinion

Lafferty argues that the ALJ "manufactured an inconsistency" in McCullough's report in order to support discrediting it (Dkt.

<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**</u>

---

No. 11 at 9). The R&R, however, concluded that "the ALJ followed proper procedure" (Dkt. No. 15 at 24-26).[5] Lafferty objects that, in order to support the ALJ's mischaracterization of McCullough's report, Magistrate Judge Trumble engaged in his own "post-hoc rationalization" that McCullough documented "non-severe" findings (Dkt. No. 16 at 3).

Absent from the record is any evidence that the ALJ dredged up "specious inconsistencies" in McCullough's report. <u>Dunn</u>, 607 F. App'x at 267. Lafferty takes issue with the ALJ's note that McCullough only observed "moderate" symptoms, and likewise criticizes the R&R for calling these symptoms "non-severe" (Dkt. Nos. 11 at 9; 16 at 3). Regardless of the adjectives selected to describe Lafferty's symptoms during the examination performed by McCullough, there can be no dispute that McCullough concluded his observation of Lafferty's symptoms with the following description:

> During my interactions with Mr. Lafferty I noted a moderate degree of suspiciousness. He was not actively hallucinatory on either of the dates I spoke with him. . . . I found him easily derailed at times and he showed a

---

[5] Lafferty appears to abandon his previous arguments that the ALJ improperly considered McCullough's status as an attorney referral. He does not object to the R&R's conclusion that, as evidence of the "nature of the relationship between the opining health care provider and the claimant," this is an appropriate factor for the ALJ to consider (Dkt. No. 15 at 24).

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

---

degree of circumstantiality in his responses to this examiner.

(Dkt. No. 7-7 at 80). The ALJ found that these personal observations failed to support McCullough's ultimate opinion, based on an MCMI-III assessment and Lafferty's prior diagnoses, that "it [was] quite likely that the stress of sustaining employment, even [] a low stress, low productivity quota job[] will not only increase his delusional and hallucinatory symptoms but will mostly [sic] likely led [sic] to a period of significant decompensation" (Dkt. Nos. 7-2 at 25; 7-7 at 80).

Importantly, the ALJ did not discount McCullough's conclusion simply because he disagreed with its medical interpretation, and decided to "play doctor." Schmidt, 914 F.2d at 118. Rather, he found the conclusion that any employment would lead "to a period of significant decompensation" to be inconsistent with McCullough's own observations, as well as other evidence in the record, including Lafferty's "limited treatment history and only moderate limitations with relation to GAF scores and []mild dysfunction in domains I and II found by his treating mental health providers" (Dkt. No. 7-2 at 25). The ALJ is, in fact, required to "consider the medical opinions . . . together with the rest of the relevant

evidence." 20 C.F.R. § 404.1527(b). Therefore, the Court **ADOPTS** the R&R's conclusion that the ALJ followed the proper procedure and relied on substantial evidence to support the weight that he gave to McCullough's opinion (Dkt. No. 15 at 27).

### b. Evidence Relied Upon

Lafferty contends that, although the ALJ discounted all psychological opinions, he was not clear about the evidence on which he relied when he allegedly formulated his own analysis of the medical evidence (Dkt. Nos. 11 at 10-16; 16 at 3). Contrary to these arguments, however, the ALJ's decision to discount psychological opinions and reach a contrary conclusion does not equate to improperly "rel[ying] on his own analysis of . . . Lafferty's medical signs and symptoms" (Dkt. No. 16 at 2, 4). Given the ALJ's thorough discussion of Lafferty's treatment history, it is clear that he did not "supplant[] the expert medical opinions . . . based only on GAF scores" (Dkt. No. 16 at 4-5).

Lafferty's contention that this Court's recent decision in Forquer v. Colvin dictates a remand is unavailing. In Forquer, the ALJ was presented with four mental health opinions - those of an attorney referral, a treating physician, and two state consultants. Ultimately, he discounted the opinions of the attorney referral and

treating physician, which included low GAF scores, by "relying on [the claimant's] activities of daily living." <u>Forquer</u>, 2016 WL 4250364, at *7. In addition, citing to "the evidence of record, including the mental health records and the claimant's activities," he declined to rely on the state consultants, neither of which reported a severe impairment. <u>Id.</u> at *8. The Court concluded that, although the ALJ had cited to "the evidence of record," he had relied heavily on only one special factor, the activities of daily living, and had failed to make clear whether he had relied on any additional evidence. Because the ALJ had "failed to sufficiently explain how he derived his opinion," the Court remanded the case for further consideration. <u>Id.</u>

Unlike the ALJ in <u>Forquer</u>, the ALJ in this case met his burden by considering all the evidence and providing clear reasoning for his decision. An ALJ need not credit "one of the medical opinions" in order to support a decision; "[r]ather, what the ALJ must consider is the evidence of record, which 'may contain medical opinions.'" <u>Id.</u> at *6 (quoting 20 C.F.R. § 404.1527(a)(2)). After discounting McCullough's opinion on employability, the ALJ supported his RFC determination by pointing to Lafferty's "limited treatment history and only moderate limitations with relation to

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

GAF scores and []mild dysfunction in domains I and II found by his treating mental health providers" (Dkt. No. 7-2 at 25). In addition, the ALJ explained the weight he gave to the various GAF scores. See <u>Nienaber v. Colvin</u>, No. C13-1216-RSM, 2014 WL 910203, at *4 (W.D. Wash. Mar. 7, 2014) (discussing that a GAF score needs supporting evidence to be given much weight). After noting that they were assigned by Lafferty's treating mental health providers, he compared those scores to Lafferty's treatment history, reasoning that "the scores indicate that despite an exacerbation in symptoms, [Lafferty's] functional abilities have remained at a moderate level with treatment." <u>Id.</u> at 26. Therefore, the ALJ supported his conclusion with substantial evidence.

Lafferty's arguments amount to a request that this Court reweigh the same evidence considered by the ALJ and find that he reached an incorrect conclusion. However, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." <u>Mut. Mining, Inc.</u>, 80 F.3d at 113. Therefore, finding substantial evidence for the ALJ's finding, the Court **ADOPTS** the conclusion in the R&R that the ALJ properly

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

considered Lafferty's mental health and supported his decisions with substantial evidence (Dkt. No. 15 at 27, 31).

**B.    Credibility Determination**

Lafferty argues that the Court must remand this case because the ALJ erred when assessing his credibility (Dkt. No. 11 at 12). He alleged that the ALJ created an arbitrary standard by suggesting that his activities of daily living are "not consistent with a totally disabled individual." Id. at 13. He further contends that, given his eligibility to seek DIB, the ALJ should not have speculated on his motivation to work. Id. at 14. The R&R concluded, however, that the ALJ's credibility determination was supported by substantial evidence (Dkt. No. 15 at 37). Lafferty objects that, although the ALJ may have used the appropriate factors to assess credibility, his analysis was tainted by his prior decision to discount McCullough's opinion (Dkt. No. 16 at 4). Lafferty also reasserts his arguments concerning his activities of daily living and work ethic. Id. at 3-4.

**1.    Applicable Law**

An ALJ uses a two-step process when determining whether a person is disabled by pain or other symptoms. Craig, 76 F.3d at 594. First, objective medical evidence must exist showing a medical

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

impairment resulting from anatomical, physiological, or psychological abnormalities that "could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting 20 C.F.R. § 416.929(b) (2011); 20 C.F.R. § 404.1529(b) (2011)); see also Social Security Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996) [hereinafter SSR 96-7p].

After the claimant makes this "threshold showing," the ALJ must next evaluate the credibility of the claimant regarding his subjective symptoms. SSR 96-7p, 1996 WL 374186, at *2. The ALJ must assess the intensity, persistence, and limiting effects of the claimant's symptoms "to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. If the claimant's statements about the intensity, persistence, or functionally limiting effects of pain or symptoms are unsubstantiated by objective medical evidence, the ALJ must "make a finding on the credibility of those statements based on the consideration of the entire case record," including the medical signs and laboratory findings, the claimant's statements, any statements by medical professionals, and any other relevant evidence. Id.

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]

When the ALJ needs additional information to assess the claimant's credibility, he must "make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements" and consider, in addition to objective medical evidence, the following:

1.   The individual's daily activities;

2.   The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.   Factors that precipitate and aggravate the symptoms;

4.   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *3. Although the ALJ need not document specific findings as to each factor, Wolfe v. Colvin, No. 3:14CV4, 2015 WL 401013, at *4 (N.D.W. Va. Jan. 28, 2015) (Groh, J.), his decision "must contain

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]

specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.

An ALJ's credibility determinations are "virtually unreviewable." Ryan v. Astrue, No. 5:09CV55, 2011 WL 541125, at *3 (N.D.W. Va. Feb. 8, 2011) (Stamp, J.) (quoting Darvishian v. Geren, No. 08-1672, 2010 WL 5129870, at *9 (4th Cir. 2010)). Because the ALJ observed the claimant's demeanor during the administrative hearing, his determination regarding credibility is to be given great weight. Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1997) (internal citations omitted).

### 2. Analysis

The R&R concluded that the ALJ supported his credibility finding with substantial evidence by examining all of the appropriate factors outlined by the Commissioner in SSR 96-7p (Dkt. No. 15 at 33). In his objections, Lafferty concedes that "[t]he ALJ's use of such factors is likely correct." He argues, however, that the ALJ's application of the appropriate factors is merely an extension of his decision to discount all expert evidence and

supplant it with his own interpretation, which is "based only on GAF scores" (Dkt. No. 16 at 4).[6] In addition, he argues that "Lafferty's alleged lack of motivation to work" is supported only by the ALJ's speculation, not any medical expert. Id.[7]

The ALJ found that Lafferty had made the "threshold" showing that his "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" (Dkt. No. 7-2 at 23). He then went on to determine that Lafferty's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Id. As Magistrate Judge Trumble outlined in his R&R, the ALJ clearly considered all the appropriate factors from SSR 96-7p to reach this determination. He considered Lafferty's daily activities,[8] pain and other symptoms,

---

[6] This portion of Lafferty's objection is mooted by the Court's determinations regarding the ALJ's reasoning on McCullough and the mental health evidence.

[7] To the extent that Lafferty seeks to rely on the credibility analysis in Forquer, his reliance is misplaced. There, the Court remanded the credibility determination so that the ALJ could consider "evidence that contradicted his opinion on credibility" that he had failed to address. 2016 WL 4250364, at *11. Lafferty has pointed to no such evidence here. Rather, he simply disagrees with the ALJ's assessment.

[8] Although Lafferty does not raise the argument again in his objections, the Court agrees with the R&R's conclusion that the ALJ did not improperly "ratchet up" the standard by noting that

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

---

medications, treatment and other measures, GAF scores, and work history (Dkt. No. 15 at 33-36). In summary, the ALJ reached the following conclusion:

> The claimant has a treatment history, which fails to demonstrate a condition of the degree of severity that the claimant has alleged, and he has engaged in significant daily activities. Further, a review of the claimant's work history shows that the claimant only has four years of earning during his entire employment history that is reflective of substantial gainful activity levels of employment, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments.

(Dkt. No. 7-2 at 26).

Moreover, the Court is not persuaded by Lafferty's objection that the ALJ made a "legally insufficient," and thus reversible, error by "speculat[ing]" on his work history (Dkt. No. 16 at 4). As Magistrate Judge Trumble discussed in the R&R, whether or not any "medical expert opined as to such a conclusion," id., it is entirely appropriate for an ALJ to consider a claimant's work history when analyzing credibility. See, e.g., Buckner v. Astrue, 646 F.3d 549, 555-56 (8th Cir. 2011) (upholding ALJ decision that

---

Lafferty's "activities of daily living are not consistent with a totally disabled individual" (Dkt. No. 15 at 33 n.10). See Dunn, 607 F. App'x at 272 (affirming an ALJ decision reasoning that the claimant "ha[d] not generally received the type of medical treatment one would expect for a totally disabled individual" (emphasis added)).

reasoned a claimant's "sporadic work history prior to his alleged disability date 'indicates that he was not strongly motivated to engage in productive activity,' which weighed against his credibility"); Campbell v. Astrue, 465 Fed. App'x 4 (2d Cir. 2012) (unpublished summary order) ("[A] good work history may be deemed probative of credibility.").

Although "Lafferty worked enough to obtain disability insurance coverage," the ALJ nonetheless properly considered his work history as a factor in the credibility analysis, and did not commit legal error when he noted that, in light of Lafferty's limited income since 1998, he had "demonstrated little apparent motivation, inclination, or need to sustain consistent employment" (Dkt. No. 7-2 at 26). As a consequence, Lafferty has not demonstrated that the ALJ's "virtually unreviewable" credibility determination was not based on substantial evidence.

Therefore, for the reasons stated more fully in the R&R, the Court **ADOPTS** Magistrate Judge Trumble's conclusion that the ALJ's credibility determination was reached in accordance with the law and supported by substantial evidence (Dkt. No. 15 at 37).

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 15]**

---

## IV. CONCLUSION

For the reasons discussed, as well as the reasons stated more fully in the R&R, the Court:

1)   **ADOPTS** the R&R (Dkt. No. 15);

2)   **DENIES** Lafferty's motion for summary judgment (Dkt. No. 10);

3)   **GRANTS** the Commissioner's motion for summary judgment (Dkt. No. 12);

4)   **AFFIRMS** the Commissioner's decision; and

5)   **DISMISSES** this case **WITH PREJUDICE.**

The Court further **DIRECTS** that this case be **STRICKEN** from the active docket of this Court.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk of Court to transmit copies of this Memorandum Opinion and Order to counsel of record, and to enter a separate judgment order.

DATED: March 3, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE